William B. Lawless, J.
The principal action involves a claim by the plaintiff, Phoenix Die Casting Company, against defendant Manufacturers and Traders Trust Company, wherein the plaintiff alleges that during 1963 it maintained a checking account with the defendant bank and that on July 9, 1963 a check was drawn on plaintiff’s account at the defendant bank in the amount of $14,300 payable to the order of one William L. Braun. The complaint further alleges that the said check was indorsed by someone other than the payee and the amount of the check charged to plaintiff’s account by defendant, Manufacturers and Traders Trust Company.
A verified answer was served by the defendant, Manufacturers and Traders Trust Company, and subsequently an amended answer was served which denies the material allegations of the complaint and sets forth three separate and complete affirmative defenses to the plaintiff’s cause of action. Prior to the service of the amended answer and subsequent to the service of the initial answer by the defendant, Manufacturers and Traders Trust Company, the defendant Manufacturers and Traders Trust Company commenced a third-party action against Buffalo Savings Bank, the third-party defendant herein. The thrust of the third-party complaint is that if the defendant, Manufacturers and Traders Trust Company, shall be found liable to the plaintiff in the principal action, the third-party defendant will be obligated to hold the defendant, Manufacturers and Traders Trust Company, harmless with respect to such liability.
The facts as they are set forth in the verified pleadings and the affidavits accompanying the motion papers can be briefly summarized as follows. On or about April 3, 1963 the plaintiff adopted a resolution at a meeting of its Board of Directors authorizing and directing the defendant, Manufacturers and Traders Trust Company, as a designated depositary of the corporation, to honor checks, drafts, or other orders for the payment of money drawn in the corporation’s name, when bearing or purporting to bear the facsimile signature of Herbert J. *154 McCauley or William L. Braun. Sometime subsequent to that date and prior to the execution, negotiation and payment of the check in question, the defendant Manufacturers and Traders Trust Company, received a certified copy of said resolution containing the signatures (or facsimile signatures) of the two individuals so designated by the corporate resolution. On July 9, 1963 a check was drawn on plaintiff’s account at the defendant Manufacturers and Traders Trust Company, in the amount of $14,300, payable to the order of one William L. Braun. It is not clear from the papers, but it can be assumed for purposes of these motions, that the payee named on this check was the same William L. Braun, whose signature or facsimile signature appeared on the face of the check. Apparently the plaintiff does not dispute the fact that the signature on the face of the check of the maker is genuine since its cause of action is based on a forged indorsement rather than the forged signature of the maker. Also there appears to be a substantial question as to the indorsement of the signature of William L. Braun, specifically whether this indorsement was written by some unauthorized person or party or whether the indorsement was applied to the instrument in a manner similar to the application of the facsimile signature of the maker on the face of the check. Under the indorsement of William L. Braun on the back of the check appears a restrictive indorsement ‘ ‘ for deposit to the credit of Josephine Kelpin, Incomp., Charles D. Natal, Committee ” and a further indorsement by the Buffalo Savings Bank, the collecting bank and the third-party defendant in this action. It appears from the affidavits contained in the moving papers that the Buffalo Savings Bank acted as the collecting bank and in due course the said check was presented to the defendant, Manufacturers and Traders Trust Company, and was paid and charged against the account of the plaintiff herein. It is further alleged by the third-party defendant, Buffalo Savings Bank, in its proposed amended answer, paragraph thirteenth, that the said amount of $14,300 was withdrawn by and duly paid to the depositor of said check by the Buffalo Savings Bank in good faith without knowledge of any irregularities and without any negligence on its part.
The third-party defendant, Buffalo Savings Bank, now seeks leave of the court to amend its answer to include an additional defense similar to the defense raised in the amended answer served by the defendant, Manufacturers and Traders Trust Company, in the primary action. This defense is based upon the existence of the plaintiff’s corporate resolution authorizing the defendant, Manufacturers and Traders Trust Company, to *155 accept checks with facsimile signatures. Since CPLR 3025 (subd. [b]) authorizes amended pleadings under these circumstances, the third-party defendant, Buffalo Savings Bank, is hereby granted leave to serve the amended answer set forth in its moving papers.
The third-party defendant, Buffalo Savings Bank, also seeks summary judgment under CPLR 3212 dismissing the third-party complaint. The defendant and third-party plaintiff, Manufacturers and Traders Trust Company, also requests summary judgment under CPLR 3212 dismissing the complaint in the principal action and in the event said motion is denied requests partial summary judgment on the issue of liability against the third-party defendant, Buffalo Savings Bank. The plaintiff in the principal action also seeks summary judgment against the defendant, Manufacturers and Traders Trust Company, presumably also under CPLR 3212.
CPLR 3212 authorizes the making of such motions for summary judgment after issue has been joined. The CPLR 3212 (subd. [b]) further requires that the motion be granted “ if, upon all of the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party. The motion shall be denied if any party shall show facts sufficient to require a trial of any issue of fact other than an issue as to the amount or the extent of the damages. ’ ’
In order to ascertain whether summary judgment is proper under these facts, we must first look to the instrument itself. This court is of the opinion that the instrument with the facsimile signature of William L. Braun affixed thereto was a valid instrument and not a forgery as that term is used under the Negotiable Instruments Law in effect at the time this check was issued and negotiated. To be a valid negotiable instrument, the document must be signed by the maker or drawer (Negotiable Instruments Law, § 20). If, in fact, the signature of William L. Braun on the face of the check was the facsimile signature authorized by the corporate resolution dated April 3, 1963, and none of the parties seem to dispute that this signature was in fact the facsimile signature authorized by such a resolution, then there can be no forgery of the instrument as between the drawer, the plaintiff in this action, and the drawee, the defendant, Manufacturers and Traders Trust Company. This conclusion is further fortified by section 46 of the General Construction Law, which provides: “ The term signature includes any memorandum, mark or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instru *156 ment or writing with intent to execute or authenticate such instrument or writing.”
The court further assumes that the plaintiff does not dispute the validity of this instrument nor its effect as a negotiable instrument under the Negotiable Instruments Law since its cause of action has been based entirely on the alleged forged indorsement of the payee rather than a forgery of the signature of the maker. Therefore, the plaintiff’s right to recover and the liability of the defendant, Manufacturers and Traders Trust Company, and the third-party defendant, Buffalo Savings Bank, must turn solely upon the issue of the indorsement by the payee. If, in fact, the check were payable to a named payee and required indorsement by the named payee for negotiation and the indorsement appearing on the reverse side of the check is in fact a forgery, then defendant, Manufacturers and Traders Trust Company, must credit the plaintiff’s account for the amount of this check since a forged indorsement is inoperative to transfer any rights in the instrument (Negotiable Instruments Law, § 42) if the plaintiff has in fact given the defendant, Manufacturers and Traders Trust Company, the required notice under section 43 of the Negotiable Instruments Law. (See, also, Uniform Commercial Code, § 4-406.) It is interesting to note that the plaintiff in its complaint (par. 6th) alleges the giving of said notice to the defendant Manufacturers and Traders Trust Company, and the amended answer of the defendant, Manufacturers and Traders Trust Company in paragraph second of its answer denies each and every allegation in paragraph 6th of the plaintiff’s complaint. The existence of this single issue of triable fact raised by the pleadings would alone defeat the granting of summary judgment under CPLR 3212. If the trial of this issue of fact resulted in a finding that the indorsement was in fact forged and the statutory notification was properly given by the plaintiff to the defendant Manufacturers and Traders Trust Company, presumably the plaintiff could recover against the defendant, Manufacturers and Traders Trust Company. Furthermore, since the third-party defendant Buffalo Savings Bank, had guaranteed to the subsequent indorser or holder, Manufacturers and Traders Trust Company, the genuineness of all indorsements preceding its own, presumably the defendant Manufacturers and Traders Trust Company, could seek appropriate indemnification from Buffalo Savings Bank, and Buffalo Savings Bank in turn from any prior indorsers on the basis of its indorsement contract.
Notwithstanding the existence of the triable issue of fact mentioned above, we feel constrained to proceed further since *157 the third-party defendant, Buffalo .Savings Bank has raised the question of the effect of section 28 of the Negotiable Instruments Law, which provides, in pertinent part, as follows:
‘ ‘ The instrument is payable to bearer: * * * 3. When it is payable to the order of a fictitious person, or a non-existing person, or an existing person not intended to have any interest in it, and any such fact was known to the person making it so payable, or known to his employee or other agent who supplied the name of such payee ”. (Italics added.)
The third-party defendant, Buffalo Savings Bank, takes the position that the check was made payable to a fictitious payee or an existing person not intended to have any interest in it and that accordingly the instrument was payable to bearer under section 28 and any indorsement subsequent to the indorsement of the fictitious or nonexistent payee was without legal effect.
Subdivision 3 of section 28 was amended by chapter 726 of the Laws of 1960, which amendment added the words which are italicized in the quotation of the section above. The Governor’s statement on signing this bill, as it is contained in the Laws of 1960, page 2037, indicates that this revision of section 28 arose as a result of the decision in City of New York v. Bronx County Trust Co. (261 N. Y. 64). (N. Y. Legis. Ann., 1960, p. 535.) In that case the court held that where a dishonest employee makes an instrument payable to a fictitious person, the drawee or an indorser bears the loss rather than the drawer-employer. The amendments to section 28 were fashioned according to this message to change that rule and were intended to make the drawer liable on the theory that he is the party who can best prevent the loss.
This court has not found nor have the parties to this action cited any case which has construed the language added by the Laws of 1960 under the circumstances presented here. However, we find some guidance in Swift & Co. v. Bankers Trust Co. (280 N. Y. 135) in which the Court of Appeals applied Illinois law containing language equivalent to our present section 28 as amended in 1960. In that case the plaintiff’s voucher clerk induced the plaintiff’s company officers to sign checks payable to fictitious persons. These checks were validly signed by the proper corporate officers and the voucher clerk or other unknown third parties indorsed the fictitious payee’s name and received the proceeds of the checks. The court held that if New York law applied, the then section 28 required that the maker’s intention was the controlling consideration as to the designation of the payee and the maker’s intention therefore determines the *158 character of the paper, that is whether it is bearer paper or not.
The court went on to point out that this same situation existed in the State of Illinois until their Negotiable Instruments Law was amended to correspond to our present section 28 as amended in 1960, and that on the basis of the Illinois law applicable the plaintiff corporation could not recover from the defendant bank.
A reading of the legislative background to this amendment, together with the Swift Co. case and the language of section 28 compels the court to conclude that if an instrument is made payable to an existing person not intended to have any interest in it, and such fact was known to the person making it so payable or known to Ms employee, that the Legislature intended to make such an instrument bearer paper, thereby relieving a drawee or any indorser from the resulting loss and imposing the loss resulting from actions of a dishonest employee on the drawer-employer. If this were not the legislative intention of the 1960 amendments, they would add nothing to section 28 of the Negotiable Instruments Law as it previously existed. Although it has no direct bearing on the issue in this case, this construction of section 28 is consistent with the appropriate provisions of the Uniform Commercial Code. (See Uniform Commercial Code, §§ 3-405, 3-111.)
Since there is clearly a triable issue of fact regarding the knowledge and employee status of the person who affixed the payee’s name to the check in question, before the• court can conclude regarding the applicability of section 28, and further since the application of section 28 materially bears on the rights and obligations of all of the parties in this action, the granting of 'summary judgment under CPLR 3212 (subd. [b]) would be improper at this time. Accordingly, all of the parties ’ motions of summary judgment under CPLR 3212 (subd. [b]) are hereby denied.
We do not decide the additional motion of the defendant Manufacturers and Traders Trust Company for partial summary judgment against the third-party defendant Buffalo Savings Bank, because we have herein granted Buffalo Savings Bank permission to serve an amended third-party answer and therefore consideration of the motion is not timely.