276 So.2d 182 (1973)
J.H. WALL, Jr., et al., Appellants,
v.
The HAMILTON COUNTY BANK OF JASPER, Florida, a Florida Banking Corporation, Appellee.
No. S-95.
District Court of Appeal of Florida, First District.
April 19, 1973.
Edward M. Koch, Koch & Moody, Gainesville, for appellants.
W. Brantley Brannon, and Bruce W. Robinson, Brannon, Brown, Norris, Vocelle & Haley, Lake City, for appellee.
WIGGINTON, Judge.
Plaintiffs have appealed a summary final judgment rendered in favor of defendant. The material facts are not in dispute, but it is contended that the trial court erred in holding that defendant was entitled to judgment as a matter of law.
Appellants are partners doing business as Big Top Warehouse and engaged in the operation of a tobacco sales warehouse in Jasper, Hamilton County. Appellee is a Florida banking corporation which operates and has its principal place of business in Jasper. In 1971 appellants and appellee entered into a written financing agreement whereby appellee advanced to appellants capital required in the operation of their business. Appellee was designated as appellants' depository and authorized to handle the receipts derived from the conduct of its business. Paragraph 15 of the financing agreement contained this provision:
"Party of the second part [appellants] hereby waives identification on all farmers' checks issued for the payment of tobacco and guarantees party of the first part [appellee] against loss for payment of such checks without identification of party presenting the check for payment."
During the 1971 tobacco season appellants purchased from farmers tobacco brought to their warehouse for sale and paid for their purchases by printed checks bearing the facsimile signature of an authorized employee and on which the name of the payee of the check was handwritten at the time of issuance and the amount and date of the check were stamped thereon by a machine. Appellee was authorized and directed to pay all checks presented to it which met the foregoing description.
During the month of August, 1971, while the tobacco season was in progress, an unknown person presented to appellee two checks in the amount of $12,505.00 and $29,808.69 respectively. These were regular partnership checks which had previously been stolen from appellants' cash register, bearing the facsimile signature of the authorized employee, and on which the amount and date of each check were imprinted by the machine customarily used by appellants. These checks were similar in all respects to the checks which appellee was accustomed to cashing for farmers selling their tobacco to appellants. The checks were honored by appellee, and the amount called for in each check was paid to the person presenting them. Upon discovering that the checks had been drawn by an unauthorized person without the knowledge and consent of appellants, they made demand on appellee for reimbursement *183 of the funds debited against their account in payment of the checks in question. Upon appellee's refusal to restore the amount of these checks to appellants' account, this suit was instituted.
The applicable provision of the Uniform Commercial Code bearing on the matter of unauthorized signatures affixed to checks drawn on banks in this state is as follows:
"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value."[1]
The question of law presented for decision is whether under the foregoing facts it must be held as a matter of law that appellants are precluded from denying the legal effect of the facsimile signature of their authorized employee appearing on the checks which were cashed by appellee because of the fact that they had not authorized the drawing of the checks by the person who stole them from their cash register and filled them out on their check writing machine.
A similar question arose in the case of Wilmington Trust Company v. Phoenix Steel Corporation[2] where there was in full force and effect a provision of the Delaware Uniform Commercial Code similar to the above-quoted provision which is in effect in Florida. The agreement between the plaintiff-depositor and the defendant-bank in the Wilmington case provided:
"... [The] Bank was `authorized and requested to ... honor... and pay, without limit as to amount and without further inquiry, ...' checks drawn in accordance with the [agreements] and that Bank `shall be fully protected in acting on such authority.'. ."
The provision of the Delaware Uniform Commercial Code then in effect provided:
"... `Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it... .'"
An employee of the plaintiff-steel company stole a number of authentic, blank company payroll checks and an authentic facsimile signature plate bearing the name of the officer authorized to sign checks on the company's payroll account by use of a facsimile signature. The employee filled out the stolen checks in various amounts and cashed them at the bank on which they were drawn. The bank honored the checks and debited the steel company's account in the usual course of its business and in accordance with its usual practice. The steel company brought suit for the amounts debited against its account on the checks drawn against it without its knowledge and consent.
In holding that the bank was entitled to a summary judgment on the facts presented in that case, the court held that the agreement between the parties regarding the honoring and payment of company payroll checks bearing the facsimile signature of its authorized officer was designed to protect the bank when a check was presented for payment in the normal course of business, and that the steel company was precluded from denying that the genuine facsimile signature appearing on the checks was authorized. It was held that the provision of the agreement which authorized the bank to cash checks drawn against the steel company's account without further inquiry limited the bank's duty to a determination of the authenticity of the facsimile signature. Since authenticity was admitted, the bank was held to be fully protected in honoring the checks involved regardless of the manner of presentment.
It is our view that the holding of the Delaware court in the Wilmington Trust Company case is applicable to the issues *184 raised in the case sub judice. On the strength of that authority, we hold that the trial court was correct in rendering the summary judgment appealed herein. The judgment is accordingly affirmed.
Affirmed.
CARROLL, DONALD K., Acting C.J., and RAWLS, J., concur.
NOTES
[1] F.S. § 673.404, F.S.A.
[2] Wilmington Trust Company v. Phoenix Steel Corporation, 273 A.2d 266, 267, 268 (Del.Supr. 1971).